UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RHONDA G. BIDDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-198-HBG |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 18]. Now before the Court is Plaintiff's Motion for Judgment as a Matter of Law and Memorandum in Support [Docs. 15 & 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20]. Rhonda G. Biddle ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

### I. PROCEDURAL HISTORY

On September 24, 2013, Plaintiff filed an application for disability insurance benefits [Tr. 18, 123–25] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on September 24, 2013, the amended onset date. [Tr. 149–50 (amended onset date)]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 86]. A hearing was held on September 10, 2015. [Tr. 33–55]. On February 18, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 20–27].

The Appeals Council denied Plaintiff's request for review on March 2, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 3, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of September 24, 2013 through her date last insured of December 31, 2014 (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease (DDD); essential hypertension; and obesity (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can occasionally climb, balance, stoop, kneel, crouch, or crawl.
>
> 6. Through the date last insured, the claimant is unable to perform past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on February 19, 1961 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 24, 2013, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g)).

[Tr. 20–26].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his

4

impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V. ANALYSIS

Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence, as the ALJ improperly "accepted the findings of the non-examining and non-treating state agency physician[s] over the examining consultative physician." [Doc. 16 p. 7]. Additionally, Plaintiff asserts that the ALJ did not provide sufficient explanation for the weight assigned to the medical

opinions of the nonexamining state agency physicians, Karla Montague-Brown, M.D. and Joseph Curtsinger, M.D. [*Id.* at 8]. Further, Plaintiff contends that "the ALJ did not properly consider the functional capacity exam . . . performed at the request of Dr. Elmer Pinzon." [*Id.* at 7–8]. Lastly, Plaintiff implies that the ALJ's finding that she did not meet Listing 1.04(A) is not supported by substantial evidence. [*Id.* at 2–3]. The Court will address each allegation of error in turn.

### A. Medical Opinions

First, Plaintiff contends that the ALJ improperly evaluated the opinion evidence in her case by accepting the findings of the nonexamining state agency physicians, Dr. Montague-Brown and Dr. Curtsinger, over the opinion of the "examining consultative physician." [Doc. 16 p. 7]. The ALJ assigned great weight to the opinions of the nonexamining state agency physicians, finding that their opinions were "consistent with the record as a whole." [Tr. 24]. The ALJ also assigned significant weight to the opinion of consultative examiner, Jeffrey Uzzle, M.D.'s opinion "to the extent that it is consistent with the residual functional capacity, as it is well-supported by the exam's findings." [*Id.*]. However, the ALJ gave Plaintiff "the benefit of the State agency physician's more restrictive assessment" over that of consultative examiner, Dr. Uzzle. [*Id.*].

Plaintiff was consultatively examined by Dr. Uzzle on October 22, 2015, who performed an orthopedic exam and reviewed Plaintiff's records provided by the state agency. [Tr. 385–396]. Dr. Uzzle noted that Plaintiff reported back problems, high blood pressure, type 2 diabetes, spondylosis, GERD, degenerative disc disease, heart problems, nerve damage to her left sciatic nerve, and muscle spasms. [Tr. 394]. Further, Dr. Uzzle detailed that Plaintiff reported that she injured her lower back while lifting a resident in 2012 and was restricted to lifting no more than twenty-five pounds. [*Id.*]. On examination, Plaintiff was noted as being morbidly obese, but

6

exhibiting normal state and gait, toe walking, heel walking, deep knee bend, and tandem walking; Plaintiff's range of motion was intact except for pain limited dorsolumbar flexion 70 degrees and extension 20 degrees; intact sensation, as well as 5/5 strength testing, in all four extremities; and negative straight leg raise signs and no neurological radiculopathy deficit. [Tr. 395–96].

Therefore, Dr. Uzzle opined that Plaintiff could continuously lift and carry up to ten pounds, frequently lift and carry up to twenty pounds, occasionally lift and carry up to fifty pounds, and never lift or carry over fifty pounds. [Tr. 385]. Additionally, Dr. Uzzle found that Plaintiff could sit for three hours at one time without interruption, could stand and walk for two hours at one time without interruption, could sit for seven hours total in an eight-hour work day, and could stand or walk for five hours total in an eight-hour work day. [Tr. 386]. Lastly, when evaluating Plaintiff's postural activities, Dr. Uzzle opined that Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds, and could also frequently balance, stoop, kneel, crouch, and crawl. [Tr. 388].

With regard to the nonexamining state agency physicians, Dr. Montague-Brown reviewed the record on January 29, 2014 at the initial level of the agency's determination and opined that Plaintiff could perform the following activities in an eight-hour workday: she could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; she could stand and/or walk, with normal breaks, as well as sit, for six hours of an eight-hour workday; and that she could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, could frequently balance, and could occasionally stoop, kneel, crouch, or crawl. [Tr. 59–60]. At the reconsideration level, on April 14, 2014, Dr. Curtsinger affirmed Dr. Montague-Brown's assessment and limitations. [Tr. 69–70].

The Court notes that Plaintiff does not identify the opinion of which "consultative physician" the ALJ should have accepted over the opinions of the nonexamining state agency

7

physicians. [Doc. 16 p. 7]. However, the ALJ gave Plaintiff "the benefit of the State agency physician's more restrictive assessment" over that of consultative examiner, Dr. Uzzle. [Tr. 24]. Therefore, any claim that the ALJ improperly accepted the findings of the nonexamining state agency physicians over the opinion of Dr. Uzzle does not constitute a basis for remand, as the opinions of the nonexamining state agency physicians found that Plaintiff could perform light work, with certain postural limitations, as opposed to Dr. Uzzle's opinion that Plaintiff could perform medium work.

However, the Court construes Plaintiff's argument as claiming that the ALJ improperly afforded great weight to the opinions of the nonexamining state agency physicians over the physician Plaintiff was referred to during his workers compensation appeal, Elmer Pinzon, M.D.

Following her injury, Plaintiff was referred to Dr. Pinzon on January 7, 2013 by the workers compensation panel with complaints of chronic lower back pain, left hip and leg pain, and paresthesias. [Tr. 233]. Dr. Pinzon noted Plaintiff had previously attempted conservative treatment and reported moderate relief from physical therapy. [Tr. 229]. Upon examination, Plaintiff exhibited limited range of motion in her lumbar spine, abnormalities of the lumbosacral spine, and a positive straight leg raise test. [Tr. 231–32]. Dr. Pinzon directed Plaintiff to continue pain medication, as well as provided her with a lumbar brace and TENS unit for nerve stimulation to treat her pain. [Tr. 233]. Additionally, Dr. Pinzon found that Plaintiff could return to light duty status, while not lifting more than twenty-five pounds and limited bending, stooping, or squatting. [Tr. 234]. A LLE nerve conduction study was performed on January 28, 2013, in which Dr. Pinzon found that Plaintiff was "essentially" within normal limits, although Plaintiff refused an EMG needle exam. [Tr. 241]. Then, on February 5, 2013, Plaintiff was seen again by Dr. Pinzon, and noted "good relief" from the back brace and nerve stimulation, but she reported increased lower

back pain since lifting a bag of "ice melt." [Tr. 246].

On April 24, 2013, Dr. Pinzon noted that Plaintiff reported progress in physical therapy, as well as that she continued to decline lumbar spine or intramuscular trigger point injections—despite that they were strongly recommended by the neurologist she met with for an evaluation for her lower back pain on October 30, 2012. [Tr. 255]. Dr. Pinzon then ordered a functional capacity evaluation ("FCE") to assist in determining Plaintiff's work status. [*Id.*].

The FCE was performed by Jeffrey Chandler, MSPT, on June 25, 2013. [Tr. 288–89]. The physical therapist subsequently assessed Plaintiff with a "physical demand" level of light work, and thus found that Plaintiff did not retain the ability to return to her previous job which required medium work. [Tr. 288–89, 291]. Plaintiff was found to have functional limitations in walking, stair climbing, and repetitive and sustained squatting. [Tr. 288]. The FCE indicated that Plaintiff should avoid repetitive and sustained squatting [Tr. 290], and that Plaintiff could sit for forty-five to sixty minutes per hour, stand from thirty to forty-five minutes an hour, and walk for fifteen minutes per hour. [Tr. 291].

Plaintiff then returned to see Dr. Pinzon on July 11, 2013, and he reviewed Plaintiff's clinical findings and FCE to find that she had reached maximum medical improvement with a permanent partial disability rating of 5%. [Tr. 275]. Dr. Pinzon noted that Plaintiff's FCE found that she could perform light work status, with less than twenty-five pounds lifting overall, with lifting twenty pounds occasionally and ten pounds frequently. [Tr. 281]. Ultimately, Dr. Pinzon reported that Plaintiff could return to work with limited lifting (less than twenty-five pounds), and limited climbing, pulling, pushing, repetitive stooping, or bending on January 7, 2013, April 24, 2013 [Tr. 297, 302], and also stated on July 11, 2013 that Plaintiff's work restrictions were limited to light-duty status. [Tr. 281].

9

First, the Court notes that the ALJ did not indicate that she assigned any weight to an opinion of Dr. Pinzon. However, the Court finds that, as an initial matter, Dr. Pinzon did not offer an opinion in this case. "Medical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Pinzon's treatment notes from January to July 2013 do not constitute a medical opinion, as they do not amount to "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis.'" *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (defining "medical opinions") (quoting 20 C.F.R. § 404.1527(a)(2)); *see Pedigo v. Astrue*, No. 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) ("Where treatment records contain only the subjective complaint of the claimant and the diagnosis of a treating physician unaccompanied by any objectively-supported medical opinion as to the limitations imposed by the condition, the ALJ may properly discount them."), *report and recommendation adopted by*, No. 1:09-CV-93, 2010 WL 1408427, at *1 (E.D. Tenn. Apr. 2, 2010). Rather, Dr. Pinzon documented Plaintiff's visits from January until July 2013 to determine when Plaintiff had reached maximum medical improvement, as well as recorded her treatment and initial diagnosis, and recommended that Plaintiff be returned to light level work. *See, e.g.*, *Moore v. Berryhill*, No. 3:17-CV-165, 2018 WL 3557346, at *5 (E.D. Tenn. July 24, 2018).

However, even if Dr. Pinzon's treatment notes qualified as a medical opinion, the ALJ's failure to assign weight to the opinion of the consultative examiner would be harmless error, as the ALJ summarized Dr. Pinzon's treatment notes and adopted an RFC consistent with any opinion. *See Freeman v. Astrue*, No. 09-CV-554, 2010 WL 5209389, at *3 (N.D. Okla. Dec. 16, 2010) (finding "the Court is dubious as to whether three office visits for a 'severe' back injury in

the context of a workers' compensation case could establish a treating physician relationship under any circumstances," and the ALJ's decision "not to consider Dr. Martin a 'treating physician' is supported by substantial evidence," in part, because "he only saw plaintiff for the purpose of evaluating her physical condition in connection with plaintiff's workers' compensation claim"); *Luteyn v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 739, 744 (W.D. Mich. 2007) (finding doctor who examined claimant after being referred during workers compensation appeal was not treating physician).

If Dr. Pinzon's treatment notes constituted an opinion, the ALJ was therefore required to consider Dr. Pinzon's findings and explain the weight given to the opinion. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the SSA] will evaluate every medical opinion we receive."). The ALJ is not required to give "good reasons" for the weight assigned to non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii).

The Sixth Circuit, however, has acknowledged that the failure of an ALJ to mention a treating source's opinion can constitute harmless error in certain instances, including when the ALJ "adopts the opinion of the treating source or makes findings consistent with the opinion." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004); *see also Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 551 (6th Cir. 2010). This rationale has been extended to situations in which the ALJ fails to assign weight to the opinion of a consultative examiner. *See Dykes ex. rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) ("[I]f the refusal to even

11

acknowledge the opinion of a treating physician was harmless error in *Heston*, then the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal.") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)).

Here, Dr. Pinzon stated that Plaintiff could return to work with light duty status and limited lifting, climbing, pulling, pushing, pushing, or repetitive stooping or bending. [Tr. 281, 297]. Dr. Pinzon also noted that Plaintiff reported "good relief" from the back brace and nerve stimulation. [Tr. 246]. The ALJ also summarized Dr. Pinzon's treatment notes, stating that Plaintiff reported relief from her pain by sitting with ice and walking, as well as physical therapy, Plaintiff was put on light-duty work restriction, and a nerve conduction study of Plaintiff's left lower extremity was "essentially" within normal limits. [Tr. 22]. Accordingly, the ALJ determined that Plaintiff had the RFC to perform light work, and accounted for Plaintiff's postural limitations by finding that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl. [Tr. 21]. Therefore, because the ALJ made findings consistent with Dr. Pinzon's opinion, the ALJ's failure to specifically assign weight to any opinion was harmless error. *See, e.g.*, *Dykes*, 112 F. App'x at 468; *Sears v. Colvin*, No. 1:11-cv-96, 2015 WL 3606800, at *5 (M.D. Tenn. June 8, 2015).

Next, Plaintiff claims that "the ALJ did not properly consider the functional capacity exam performed at the request of Dr. Elmer Pinzon." [Doc. 16 p. 7]. Accordingly, Plaintiff asserts that the ALJ improperly failed to include the restrictions on sitting, standing, and walking assessed by Dr. Pinzon. The ALJ summarized the treatment records of Dr. Pinzon, and noted that Plaintiff "was put on light-duty work restriction (no lifting over 25 pounds; limited bending/stooping/squatting duties)." [Tr. 22]. Plaintiff correctly states, however, that the ALJ did not mention the FCE ordered by Dr. Pinzon—which stated that Plaintiff had functional limitations in walking, stair climbing, and repetitive and sustained squatting. However, the Commissioner

asserts that "[w]hile the ALJ did not discuss the FCE in detail," the ALJ reviewed Dr. Pinzon's treatment notes, including, in relevant part, that he released Plaintiff to return to light-duty status with not lifting more than twenty-five pounds, and limited bending, stooping, and squatting. [Doc. 20 p. 11].

Under the Social Security regulations, a physical therapist is not an "acceptable medical source" that can provide evidence to establish the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a). However, an ALJ cannot reject an opinion merely because the source is not an acceptable source. *See Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007) (stating that Social Security Ruling 06–03p does not permit an ALJ to reject a source merely because the source is not listed as an "acceptable medical source"). As an "other source," a physical therapist's opinion is "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Soc. Sec. Rul. 06–03p, 2006 WL 2329938, at *3 (Aug. 9, 2006).

"Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Here, the ALJ's review of Dr. Pinzon's treatment records indicated that she evaluated the full medical record, including the FCE ordered by Dr. Pinzon. Dr. Pinzon's treatment notes state that he reviewed the results of the FCE with Plaintiff, and, ultimately, indicated that Plaintiff could return to light level work of lifting twenty pounds occasionally and ten pounds frequently. [Tr. 275]. The light-duty work restriction with limited bending, stooping, and squatting was consistent with the FCE findings of Mr. Chandler. [Tr. 281].

Therefore, the ALJ did not err by failing to specifically mention the FCE performed by Mr.

Chandler, as the ALJ summarized the treatment notes and work restriction of Dr. Pinzon—who referred Plaintiff for the FCE and reviewed the results with Plaintiff. *See, e.g.*, *Moore v. Comm'r of Soc. Sec.*, No. 1:16-cv-825, 2017 WL 3727231, at *5 (S.D. Ohio Aug. 9, 2017) (holding the ALJ did not err "by failing to consider such therapy notes, including FCE's completed by physical therapists"), *report and recommendation adopted by*, 2017 WL 3706006 (S.D. Ohio Aug. 28, 2017); *Fithen v. Comm'r of Soc. Sec.*, No. 1:15-cv-213, 2016 WL 1381822, at *10 (S.D. Ohio Apr. 6, 2016) (holding "Plaintiff has not shown that the ALJ erred by failing to discuss the physical therapist's FCE" as physical therapists are not acceptable medical sources and "[t]hus, the ALJ was not required to give any special deference or weight to [the physical therapist's] FCE"), *report and recommendation adopted by*, 2016 WL 2731683 (S.D. Ohio May 10, 2016). Although Plaintiff claims that the ALJ should have required a sit-stand option, due to the limitations assessed in the FCE [Doc. 16 p. 7], Dr. Pinzon did assess any restrictions on Plaintiff's sitting, standing, or walking.

Lastly, Plaintiff contends that the ALJ improperly assigned great weight to the findings of Dr. Montague-Brown and Dr. Curtsinger, the nonexamining state agency consultants, as "these physicians did not mention the findings of the FCE nor Dr. Pinzon's notes from the FCE which found no climbing and a need for significant rest periods as well as a sit-stand option." [Doc. 16 p. 8]. However, the Commissioner asserts that the state agency medical consultants specifically stated that they considered Dr. Pinzon's light duty work restriction.

Here, the opinions of Dr. Montague-Brown and Dr. Curtsinger note that they reviewed the treatment notes from Dr. Pinzon, including the FCE, as the evidence of record. [Tr. 57, 67]. Specifically, both opinions note Dr. Pinzon's finding on April 24, 2013 that Plaintiff could lift less than twenty-five pounds, with limited climbing, pulling, pushing, as well as repetitive stooping or

14

bending. [Tr. 61, 71]. Therefore, the Court finds that the nonexamining state agency physicians properly considered the entire medical evidence of record.

Ultimately, Plaintiff has failed to demonstrate that Dr. Montague-Brown and Dr. Curtsinger's opinions are inconsistent with the record, as the ALJ limited Plaintiff to occasional crouching. "Squatting and crouching are synonymous." *Ortiz-Fisher v. Colvin*, No. 3:13-cv-1168, 2014 WL 3529783, at *9 (M.D. Tenn. July 15, 2014) ("Although the ALJ did not repeat Dr. O'Brien's terminology [squatting], choosing instead to default to the postural limitations referenced by the Dictionary of Occupational Titles [crouching], the ALJ did not err in evaluating Dr. O'Brien's opinion."). The ALJ found that Plaintiff could only occasionally stoop, kneel, or crouch—which is not in contrast with Dr. Pinzon's finding that Plaintiff could return to light work, or even the FCE which indicated that Plaintiff should avoid repetitive and sustained squatting.

Although Plaintiff claims that the ALJ "did not reasonably explain the weight given to the non-examining and non-treating state agency physicians" [Doc. 16 p. 8], the ALJ summarized the medical record and ultimately "gave [Plaintiff] the benefit of the State agency physician's more restrictive assessment" over that of the consultative examiner, Dr. Uzzle. [Tr. 24]. Moreover, "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996). "While Plaintiff suggests that the ALJ must give 'good reasons' for the weight assigned to the opinions of the state agency psychological consultants, the Court finds that 'good reasons' need only be given in explaining weight assigned to an opinion from a treating source." *Arwood v. Berryhill*, No. 3:16-cv-652, 2018 WL 3487465, at *7 (E.D. Tenn. July 19, 2018) (citing C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397 (6th Cir. 2014)).

15

Here, the ALJ's discussion of the evidence prior to weighing the opinions of record provides context as to why Dr. Montague-Brown and Dr. Curtsinger's opinions were found consistent with the record. The ALJ reviewed Plaintiff's history and treatment for back pain, as well as the findings of the opinions of record. Further, as the Court has previously stated, the ALJ found that the most recent consultative examination, performed by Dr. Uzzle, was well-supported by the examination's findings, but gave Plaintiff "the benefit" of Dr. Montague-Brown and Dr. Curtsinger's opinions. [Tr. 24]. Ultimately, the Court finds that substantial evidence supports the weight assigned to the medical opinions of record, and Plaintiff's allegations to the contrary are without merit.

B.     **Listing 1.04A**

Plaintiff also claims that based upon her severely limited range of motion, as well as sensory nerve damage to her left leg, she should have been found to meet Listing 1.04(A). [Doc. 16 p. 3]. Plaintiff claims she has a documented history of positive straight leg raise and gait disturbance, sensory nerve damage to her left leg, and severely limited motion in all spheres of extension and flexion. [*Id.* at 2]. While Plaintiff does not list the ALJ's failure to find that she met Listing 1.04(A) as an allegation of error, out of an abundance of caution, the Court will address Plaintiff's argument.

Plaintiff bears the burden of proving every element of a listing. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016); *see, e.g.*, *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v.*

*Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§ 416.925(d), 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

Neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641 (6th Cir. 2013); *see, e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). The ALJ should analyze a relevant listing where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing. *Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir. 1990); *see also Smith-Johnson*, 579 F. App'x at 432.

Listing 1.04 covers disorders of the spine, including degenerative disc disease, and requires that the disorder result in "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04(A) further requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Accordingly, in addition to demonstrating a spinal disorder that results in the "compromise of a nerve root," Plaintiff must show (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight-leg test results, in order to meet the requirements of Listing 1.04(A). *Id.*

Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listing 1.04(A) by pointing to specific medical findings that satisfy all of the criteria of the listing. *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted). It is reversible error for an ALJ to fail to address a listing only if Plaintiff can show the record raises a "substantial question" as to whether his impairments met or medically

equaled the severity of the listing. *See Smith-Johnson*, 579 F. App'x at 432 (citing *Sheeks*, 544 F. App'x at 642; *Abbot*, 905 F.2d at 925).

In making her finding, the ALJ considered Plaintiff's degenerative disc disease, but found that "[n]o treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity." [Tr. 21]. However, the ALJ subsequently discussed Plaintiff's degenerative disc disease throughout the opinion. For example, the ALJ noted that Plaintiff exhibited normal gait, station, toe-walking, heel-walking, deep knee bend, and tandem walking during the consultative examination with Dr. Uzzle. [Tr. 22]; *see Bianchetti v. Comm'r of Soc. Sec.*, No. 1:17-cv-155, 2018 WL 3873577, at *7 (E.D. Tenn. Aug. 15, 2018) (finding substantial evidence supports ALJ's determination that Plaintiff failed to meet the "motor loss" criteria of Listing 1.04(A) as an exam "showed full motor strength, as well as normal muscle tone and strength and a normal gait"). Further, the ALJ noted that during the examination with Dr. Uzzle, Plaintiff had negative sitting and supine straight leg raise bilaterally to sixty degrees. [Tr. 22]; *see Garland v. Colvin*, No. 2:15-CV-314, 2017 WL 923956, at *8 (E.D. Tenn. Feb. 14, 2017) (finding "the listing requires a positive straight leg raising test in *both* the sitting and supine positions [and] [t]here is no evidence that she had positive straight leg raising in both required positions").

Lastly, Plaintiff exhibited normal grip strength and 5/5 strength in all four extremities. [Tr. 22], Dr. Pinzon found that Plaintiff was "essentially" within normal limits after a nerve conduction study [Tr. 241], and the ALJ noted that there was "[n]o electrodiagnosis of myopathy, plexopathy, mononeuropathy, or peripheral neuropathy" [Tr. 22]. *See Garland*, 2017 WL 923956, at *8 (finding substantial evidence supported the ALJ's decision that Plaintiff did not meet Listing 1.04(A) as the consultative examiner "observed that the plaintiff had 5/5 strength in both upper

and lower extremities with no atrophy" and "[s]he noted a normal gait").

The Court therefore finds that substantial evidence supports the ALJ's determination that Plaintiff's condition does not meet Listing 1.04. While Plaintiff points to evidence that she met at least some of the criteria of the listing, the ALJ is the trier of fact, and if substantial evidence supports her finding that Plaintiff did not meet *all* of the requirements of a listing, then the ALJ's finding must be affirmed. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Accordingly, to the extent that the ALJ committed error by failing to explicitly identify and evaluate Listing 1.04, the Court finds that such error was harmless. *See Hood v. Colvin*, No. 2:15-cv-70, 2016 WL 8711709, at *5 (M.D. Tenn. July 8, 2016) (finding Plaintiff failed to demonstrate that the ALJ erred by failing to find her impairments met or equaled Listing 1.04(A) under similar circumstances as "the ALJ ultimately relied on the reports of the examining physicians to find that Plaintiff did not meet Listing 1.04(A)").

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge